UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD D. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:19-cv-01234-GCS |
| PROGRESSIVE NORTHERN | ) |
| INSURANCE COMPANY, and AUTO- | ) |
| OWNERS INSRUANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff brought suit against Defendant Progressive Northern Insurance Company ("Progressive") and Defendant Auto-Owners Insurance Company ("Owners") on September 26, 2019 in the Circuit Court for the Third Judicial Circuit in Madison County, Illinois. (Doc. 1, Exh. A). On November 8, 2019, Defendant Owners removed the case to this Court. (Doc. 1). In his complaint, Plaintiff alleges that both defendants must provide him with under-insured motorist benefits for an accident which occurred on August 12, 2012. (Doc. 1, Exh. A, p. 4). Plaintiff also alleges that both defendants breached the terms of their insurance contracts by denying him benefits. *Id*. at p. 9. Finally, Plaintiff requests that the Court compel the parties to engage in arbitration. *Id.* at p. 11.

Now before the Court are Defendant Progressive's and Defendant Owners's motions for summary judgment. (Doc. 50, 54). Plaintiff filed a single response to the motions on February 3, 2021. (Doc. 59). On February 9, 2021, Defendant Progressive filed

a reply brief, which Defendant Owners joined on February 17, 2021. (Doc. 60, 61). For the reasons delineated below, both motions are **DENIED.**

## FACTUAL ALLEGATIONS

On August 17, 2012, Plaintiff was involved in a car accident in which he suffered personal injuries. (Doc. 51, p. 2). On the date of the accident, the at-fault driver was insured under a liability policy of insurance with State Farm Mutual Automobile Insurance Company ("State Farm"). *Id*. The driver's policy included liability limits of $25,000. *Id*.

The driver entered bankruptcy in May 2014. (Doc. 59, p. 3). At that time, her average monthly income was approximately $2,820.67, while her average monthly expenses totaled $2,623.00. *Id*. The driver filed for a Chapter 13 declaration of bankruptcy, which does not discharge liability from judgments entered against her in excess of the limit of her automobile coverage liability. *Id. See also In re Jones*, No. 17-40497, 2018 WL 4501140, at *3 (S.D. Ill. Apr. 26, 2018).

At the time of the accident, Plaintiff held an under-insured motorist ("UIM") coverage policy directly with Defendant Progressive. (Doc. 51, p. 4). Plaintiff was also trying to claim UIM benefits as a third party from Defendant Owners. The insured under Owners's policy was M&K Auto Sales, Inc., who was the owner of the vehicle that was being test driven and where Plaintiff was riding as a passenger on the day of the accident. (Doc. 54, p. 3; Doc. 58, p. 1). The relevant UIM coverage section in Plaintiff's agreement with Defendant Progressive states, in relevant part, that:

> An insured person must notify [Defendant Progressive] in writing at least 30 days before entering into any settlement with the owner or operator of an uninsured motor vehicle or underinsured motor vehicle, or any liability insurer. In order to preserve our right of subrogation, we may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle. If we do this, the insured person agrees to assign to us all their rights against the owner or operator of the uninsured motor vehicle or underinsured motor vehicle to the extent of our payment. Any judgment or settlement for damages against an owner or operator of an uninsured motor vehicle or an underinsured motor vehicle that arises out of a lawsuit brought without our written consent is not binding on us . . . Coverage under this Part . . . will not apply . . . to bodily injury sustained by any person if that person or the legal representative of that person settles without our written consent.

(Doc. 51, Exh. F., p. 9-12).

Defendant Owners contains similar language regarding notice of settlements with under-insured motorists and provides as follows:

> Underinsured Motorist Coverage [d]oes not apply . . . to any person who settles a bodily injury claim without [Defendant Owners's] written consent . . . Upon payment [of the amount equal to the amount provided for in the offer of agreement or settlement], we shall have the right of subrogation against the underinsured motorist.

(Doc. 54, Exh. B).

State Farm offered Plaintiff the full $25,000 permitted under the driver's policy in full satisfaction of Plaintiff's claims against the driver, and on October 27, 2014, Plaintiff accepted the settlement offer. (Doc. 51, p. 2). On June 2, 2015, the parties finalized the settlement and executed a full settlement agreement releasing any claims Plaintiff may have had against the driver. *Id*.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences")(internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*,

477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

This Court exercises diversity jurisdiction over this case. *See generally* (Doc. 29)(denying Plaintiff's motion to remand and dismissing non-diverse defendants for fraudulent joiner). Federal courts sitting in diversity apply federal procedural law and the substantive law of the state in which the court sits. *See Nat'l American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). "Questions of insurance-policy interpretation are substantive." *Id.* Accordingly, when analyzing the terms of an

insurance policy, a federal court sitting in diversity must apply state law. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015).

Under Illinois law, an insurance policy is interpreted as a contract. *See Westfield*, 796 F.3d at 777 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). The Court's primary objective is to ascertain and give effect to the parties' intentions, as expressed in the policy's language. *Id.* at 777-778. The Court must therefore construe the policy as a harmonious whole, taking into consideration the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subjects insured, and the purposes of the contract. *Id.* at 778 (citing *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993)). If the policy language is unambiguous and does not offend public policy, then the Court must apply the provision as written. *See Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013). Ambiguous language is construed liberally in favor of the insured; however, courts will find an ambiguity only if the policy language is susceptible to more than one reasonable interpretation. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 778 (7th Cir. 2003). Disagreement among the parties as to a provision's meaning does not establish an ambiguity in a policy's language. *Id.* Nor are policy terms ambiguous because the parties "can suggest creative possibilities for their meaning." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 340 (7th Cir. 2010)(citing *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985)). Here, the parties do not dispute that the relevant policies unambiguously

prohibit settling with a tortfeasor or her insurance provider without providing the notice necessary to preserve the insurers' right of subrogation. However, the parties dispute whether the defendants suffered prejudice due to Plaintiff's oversight.

An insurance company moving for summary judgment on the issue of whether untimely notification deprived it of its subrogation rights must provide evidence that it was substantially prejudiced by the loss of those rights. *See Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 812 (Ill. Ct. App. 2012) (internal citations omitted). As the moving party, the defendants bear the burden of proving that they suffered from substantial prejudice. *Id*. at 815. Plaintiff argues that the defendants have not met this burden on their motions for summary judgment. (Doc. 59, p. 2). As Plaintiff points out, the "mere right to sue a tortfeasor is of no value if there is no reasonable likelihood of obtaining a judgment that is worth the cost of litigation." *Jungkans*, 972 N.E.2d at 814. As the party which lost its right of subrogation could not act on the right in pursuit of value, the "loss" of a subrogation right against a judgment-proof party is technical and illusory. *Id*. (internal citations omitted). Thus, permitting that party to recover for its illusory loss would create an unjustifiable windfall at the plaintiff's expense. *Id*. (internal citations omitted).

Plaintiff provides evidence that the at-fault driver filed for Chapter 13 bankruptcy in October 2009; her case remained pending as of May 2014. (Doc. 58, Exh. 8, p. 4). However, this alone is not sufficient for finding that the at-fault driver is judgment proof. *See, e.g., In re Starling*, 359 B.R. 901, 909-910 (N.D. Ill. 2007)(stating that the purpose of a

Chapter 13 case is "to provide a means by which a debtor can repay all or part of his debts owed to his creditors over an extended period of time" while a Chapter 7 discharge ensures that the debtor is no longer personally liable for the debts at issue). Plaintiff broadly asserts that if the at-fault driver "had any idea that there could be a judgment entered against her . . . she could easily have sought to convert [her Chapter 13 filing] into a Chapter 7 . . . ." This tenuous possibility cannot support denying summary judgment. *Cf.* Fed. R. Civ. Proc. 56(c)(1)(A)(requiring the non-moving party to assert a genuine dispute of material fact by citing to evidence in the record). Plaintiff provides no evidence that the at-fault driver would have converted to a Chapter 7 filing, or that she continued to have no assets after her bankruptcy ended. *Cf. Jungkans*, 972 N.E.2d at 815 (noting that the plaintiff produced unrebutted evidence that the driver had minimal assets through the time of the accident until the close of the investigation into their finances, that the driver had two unsatisfied judgments outstanding, and that the driver was serving a four-year prison term).

However, while Plaintiff provides little evidence to support his assertion that the at-fault driver is judgment proof, the defendants provide no evidence that the at-fault driver is *not* judgment proof. Because the defendants' right of subrogation is only valuable if the at-fault driver is capable of satisfying the judgment in the event of a successful lawsuit against her, the Court finds that information about the at-fault driver's status as potentially judgment-proof is necessary to the disposition of these motions for summary judgment. As Plaintiff did not provide information about the bankruptcy

proceeding until the close of discovery and in his response to Defendants' motions for summary judgment, (Doc. 60, p. 6), Defendants lack the evidence necessary to support any response to Plaintiff's allegations. If a party fails to properly support an assertion of fact, the Court may give the parties an opportunity to properly support or address that fact. *See* FED. R. CIV. PROC. 56(e)(1). Equally, when the non-movant cannot present facts essential to justify its opposition, the Court may deny the motion for summary judgment and allow additional discovery. *See* FED. R. CIV. PROC. 56(d)(1)-(2). All parties lack the evidentiary support necessary to support their claims as to whether or not the defendants suffered prejudice due to Plaintiff's untimely notification of his settlement. Plaintiff did not provide evidence as to whether the at-fault driver remains judgment proof; Defendants cannot provide evidence as to whether she is no longer judgment proof. Accordingly, the Court finds that denying the present motions for summary judgment and reopening discovery on this topic is warranted.

Defendant Progressive argues that the at-fault driver's application for bankruptcy cannot be considered because it was not produced in discovery. (Doc. 60, p. 6). However, the Court can take judicial notice of bankruptcy proceedings. *See* 31A *C.J.S. Evidence* § 104 (2021). Though the Court chooses to take judicial notice of the fact that the at-fault driver initiated bankruptcy proceedings, whether additional evidence regarding those proceedings is admissible remains an open question. Under Federal Rule of Civil Procedure 37(c)(1), a party which fails to disclose required information cannot use that information unless the failure was substantially justified or is harmless. *See also Morris v.*

*BNSF Railway Company*, 969 F.3d 753, 765 (7th Cir. 2020). Because the Court will permit both sides to conduct further discovery on this issue, any harm due to Plaintiff's failure to disclose the bankruptcy proceedings will be rendered harmless when, and if, the parties again move for summary judgment. The parties may therefore rely on documents related to the proceedings in any future dispositive motions.

### CONCLUSION

For the above-stated reasons, the undersigned **DENIES** Defendants' motions for summary judgment. (Doc. 50, 54). Furthermore, the Court **ORDERS** that the parties be permitted to conduct discovery regarding the status of the at-fault driver's bankruptcy for no more than sixty days. The parties may therefore continue with discovery up to and including November 29, 2021. The Court will set a status conference to discuss scheduling for future dispositive motions by separate order.

**IT IS SO ORDERED.**

**DATED: September 29, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.09.29 07:05:23 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**